*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEONTA JERMAIN GILES,

        Defendant-Appellant.

UNPUBLISHED
July 21, 2026
10:56 AM

No. 371552
Wayne Circuit Court
LC No. 22-001511-01-FC

Before: MARIANI, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of one count of assault with intent to commit murder (AWIM), MCL 750.83; one count of possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

## I. BACKGROUND

This case arises out of a shooting at a gas station in Inkster on October 17, 2021. Michael Bigbee testified that on that day, he walked to the Valero gas station on Middlebelt Road in Inkster. When he arrived, he saw defendant in a car parked at a pump. Bigbee felt alarmed and fearful upon seeing defendant because they had been involved in "a prior situation." Bigbee nevertheless continued to walk into the gas station building.

When Bigbee finished inside the building and walked out, he saw defendant still at the pump. As Bigbee continued watching, defendant pulled a firearm from his waistband and said, "Why you do that?" Bigbee did not understand what defendant meant but still retreated back into the gas station building and locked the door.

Bigbee thought that defendant was about four to five feet from Bigbee when he began shooting at Bigbee through the door. Bigbee testified that defendant initially pointed the gun at Bigbee's face. The first bullet did not make it through the door's bullet-proof glass, but defendant continued firing until one bullet penetrated the door and hit Bigbee's leg. Bigbee did not notice what defendant did after the shooting because he crawled away from the door toward the bathroom.

-1-

Bigbee had no doubt that it was defendant who shot him. Bigbee thought that he was going to die. Bigbee spent three months in a rehabilitation facility because his leg had been shattered.

During cross-examination, defense counsel asked Bigbee how he knew defendant, and Bigbee described an incident in which defendant stabbed him a few weeks before the shooting.

Detective Christopher Clark with the Michigan State Police responded to the shooting as the officer in charge. Clark interviewed Bigbee at a rehabilitation facility. Clark showed Bigbee a photographic lineup that consisted of six photos, including a photo of defendant. Bigbee identified defendant as the shooter from the lineup.

Detective Lieutenant Sean Street of the Michigan State Police was assigned to assist Clark. Street reviewed the surveillance video from the gas station and determined that the suspect who shot Bigbee was driving a purple Ford Flex. Street entered the words "purple Ford Flex" into the Inkster report-writing system to determine whether any other officer had typed those words into a narrative portion of a police report. Street's search revealed defendant's name, which led to Street investigating defendant. Street searched social media and discovered an account in defendant's name. Street observed a photo posted on this account showing defendant wearing an outfit that, in Street's opinion, was identical to the one the shooter was wearing on the night of the shooting as shown in the surveillance video.

Street obtained a search warrant to track the vehicle connected to defendant and placed a tracker on the vehicle between October 25 and October 27, 2021. The vehicle was eventually located in Milford.

Trooper William Ptisch of the Michigan State Police conducted a traffic stop of the vehicle—a purple Ford Flex—on October 27, 2021. The vehicle was registered to Lena Lee, but defendant was the driver and sole occupant of the vehicle. At the time of the traffic stop, defendant was wearing an orange hooded sweatshirt similar to the one the shooter at the gas station was wearing on the night of the shooting.

Attorney Patrick Nyenhuis testified for the defense that he initially represented defendant in this case but had to withdraw when he became a witness. Nyenhuis explained that on March 2, 2022, while in an elevator in Inkster District Court, he heard Bigbee say, "I wouldn't have been here had I gotten $2,000," then chuckle. Clark was in the elevator too, but Nyenhuis did not believe that Clark heard Bigbee's statement because he was preoccupied with his phone. Hearing this statement caused Nyenhuis to withdraw as defendant's counsel because he could not prove that Bigbee made the statement without testifying as a witness.

Defendant testified that he did not know Bigbee and he did not believe that he had ever seen Bigbee around the neighborhood. Defendant denied that he ever stabbed Bigbee or was involved in any type of altercation with him. Defendant denied that he was at the Valero gas station at Middlebelt in Inkster on October 17, 2021, though he could not say where he was that night. Defendant testified that he told this to Clark. Defendant denied shooting Bigbee. Defendant knew what Nyenhuis had overheard Bigbee say in the elevator. Defendant testified that another inmate in the jail was also "pressing" defendant for money.

Defendant testified that he was married to Lee and had used her purple Ford Flex. Defendant explained that he rarely drove the Ford Flex because he did not have a driver's license, but he admitted to driving the vehicle on the day that he was arrested. Defendant agreed that the purple Ford Flex on the surveillance video from the gas station was similar to his wife's vehicle, saying, "It could be the same car."

A jury convicted defendant as stated. This appeal followed.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant first claims that he was denied the effective assistance of counsel when his trial counsel elicited testimony from Bigbee that defendant previously stabbed him.

Defendant preserved this issue by filing a motion to remand for an evidentiary hearing, but this Court denied that motion,[1] so our review is limited to errors apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

A claim of ineffective assistance of counsel involves mixed questions of law and fact—factual findings are reviewed for clear error, while questions of law are reviewed do novo. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021). Because defendant did not obtain an evidentiary hearing, "there are no factual findings to which this Court must defer," and our review is limited to determining as a matter of law whether any errors apparent on the record deprived defendant of his right to the effective assistance of counsel. *Id*.

"To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). This Court "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted).

Defendant argues that he was denied the effective assistance of counsel when his trial counsel elicited testimony from Bigbee about a prior incident in which defendant stabbed Bigbee.

---

[1] *People v Giles*, unpublished order of the Court of Appeals, entered January 24, 2025 (Docket No. 371552). As this Court's order specifies, that denial was "without prejudice to a case call panel of this Court determining that remand is necessary . . . ." *Id*. Accordingly, while our review of defendant's claim is for errors apparent on the record now before us, we are not foreclosed from determining, based upon the record, that a remand for further development of that claim is necessary. Upon plenary review of defendant's claim, however, we continue to see no need for a remand to properly adjudicate the claim.

Defendant contends that his trial counsel's introduction of this evidence fell below an objective standard of reasonableness and changed the outcome of the case because it allowed the prosecution to further question Bigbee about the stabbing.

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." MRE 404(b)(1). In a criminal case, however, material evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2). The prosecution must provide notice if it intends to offer any such evidence at trial, which includes notice of "the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose . . . ." MRE 404(b)(3)(B).

In this case, the prosecution did not file a notice pursuant to MRE 404(b)(3) and did not introduce evidence of any earlier altercation between Bigbee and defendant in its initial examination. On cross-examination, however, defendant's trial counsel elicited testimony from Bigbee about a prior altercation with defendant. Bigbee testified that he had known defendant for about one year. When Bigbee stated that he knew defendant from the neighborhood, defendant's trial counsel asked if Bigbee had any other knowledge of defendant other than being from the neighborhood. Bigbee testified that he and defendant had an altercation a few weeks before the shooting at a different gas station on Michigan Avenue. Bigbee explained that he and defendant were together in a vehicle and drove to the gas station together. The altercation began as a verbal argument because defendant said something disparaging about people from Inkster,[2] but it became physical outside of the car when they arrived at the gas station. After the fight, Bigbee recognized an acquaintance, and he jumped into their car to escape defendant. Before they could drive away, however, defendant reached through the window and stabbed Bigbee in the neck. Bigbee testified that when he stuck his leg out of the window to kick at defendant, defendant stabbed Bigbee's leg. Bigbee thought he was stabbed three or four times. Bigbee sought medical attention at a hospital but did not notify the police.

Defendant argues that it was objectively unreasonable for his trial counsel to elicit Bigbee's testimony about his prior altercation with defendant and open the door to the prosecutor's questions on that topic. We begin by noting the obvious—defendant's trial counsel elicited this testimony as part of counsel's trial strategy to discredit Bigbee. Bigbee had testified at defendant's preliminary examination that "[a] few weeks" before defendant shot him, he had a "prior altercation" with defendant in which things got physical between them, and defendant ultimately "cut [Bigbee's] face." So, when defendant's trial counsel asked Bigbee about the "prior altercation" at defendant's trial, counsel must have known where Bigbee's testimony was heading.

In closing, defendant's trial counsel emphasized Bigbee's testimony about his "prior altercation" with defendant as part of counsel's assault on Bigbee's credibility. Counsel noted that when officers pulled over defendant before he was arrested, they did not find a gun or knife in the

---

[2] Bigbee testified that he was intoxicated at the time, so he could not precisely recall the impetus for the argument.

-4-

vehicle or on defendant's person, casting doubt on Bigbee's testimony that defendant had, on two occasions, spontaneously pulled such items from his vehicle and attacked Bigbee with them. As for the "prior altercation" itself, defendant's trial counsel noted that the fight supposedly began over something small—defendant "said something disparaging about Inkster"—and escalated to defendant "pull[ing] out a knife and stabb[ing] [Bigbee], in several parts of his body." Counsel also emphasized that despite the seriousness of this alleged conduct, Bigbee never reported it to police. Defendant's trial counsel then connected this to what Bigbee said happened on the night of the shooting—Bigbee testified that defendant came up to Bigbee and said "why did you do that," which made no sense because there was "nothing on this record that Mr. Bigbee had done anything to [defendant] that would justify that type of statement."

This argument was but one part of defendant's trial counsel's attack on Bigbee's credibility. Defendant's trial counsel also attacked Bigbee's credibility by noting that he was "wanted in Indiana"; that he initially told police that "he didn't know who shot him or anything about the person that was responsible for the incident"; that Bigbee said that he would not testify if he was given money for his silence; and that Bigbee only agreed to testify after he was released from jail—counsel emphasized, "[W]hile he's not participating, he is in jail. And when he is participating, he's not in jail. I'll leave it at that." Given how defendant's trial counsel used Bigbee's challenged testimony during closing, it is obvious that counsel's decision to elicit the testimony in the first place was part of counsel's broader strategy to attack Bigbee's credibility.

That defendant's trial counsel's challenged conduct was trial strategy is not enough to defeat defendant's ineffective-assistance claim, however. A trial strategy "in fact must be sound, and counsel's decisions as to it objectively reasonable." *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014). Otherwise, courts run the risk of "insulat[ing] the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52.

Whether eliciting the harmful testimony from Bigbee was reasonable trial strategy presents a closer question. Again, defendant's trial counsel must have known that if he pursued the line of questioning about Bigbee's "prior altercation" with defendant, Bigbee was going to testify that defendant had previously stabbed him. If the jury found Bigbee credible, then hearing that defendant had previously stabbed Bigbee repeatedly would have certainly made it easier for the jury to find defendant guilty of AWIM. On the other hand, it is not unreasonable to believe that the jury would find incredible Bigbee's testimony that he was stabbed in the face by defendant but never reported it, thus diminishing the credibility of arguably the prosecution's most important witness. Keeping in mind that trial counsel "is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases," *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008), and that a strategy is not unreasonable "simply because it did not work," *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004), we conclude that counsel's performance did not amount to ineffective assistance of counsel.

Defendant's defense was actual innocence—that he was not at the gas station on the night of the shooting, and the police were trying to pin the crime on him because his wife owned a car similar to the one that the shooter was seen driving. This was an uphill battle in the face of the police's identification of defendant's wife's vehicle shortly after the shooting, Bigbee's identification of defendant as the shooter, and officers eventually stopping defendant's wife's vehicle and finding defendant in the driver's seat wearing an orange hoodie similar to the one that

the shooter was wearing on the night of the shooting. In the face of this evidence, defendant's trial counsel took a risk by eliciting the challenged testimony from Bigbee in an attempt to undermine Bigbee's credibility. Undermining Bigbee's credibility was essential for defendant's defense because Bigbee's testimony was the only direct evidence tying defendant to the crime—as convincing as the prosecution's other evidence might have been, it was all circumstantial, as defendant's trial counsel emphasized during closing argument. Because "calculated risks may be necessary in order to win difficult cases," *Unger*, 278 Mich App at 242, and because we must refrain from assessing the wisdom of such risks using "the benefit of hindsight," *Payne*, 285 Mich App at 190, we conclude that defendant's trial counsel's attempt to undermine Bigbee's credibility by eliciting testimony that ultimately turned out harmful to defendant did not fall below an objective standard of reasonableness under prevailing professional norms.

Even assuming for the sake of argument that defendant's trial counsel's challenged conduct was objectively unreasonable, defendant would still not be entitled to appellate relief because he cannot establish the prejudice prong of his ineffective assistance claim. The main issue in this case was identification—whether defendant was the individual who shot Bigbee at the gas station on the night of October 17, 2021. Surveillance video from the gas station showed that the shooter drove a purple Ford Flex. Searching the Inkster report-writing system for references to this type of unique car led officers to defendant. An officer later pulled over the Ford Flex connected to defendant and found defendant driving it, despite the vehicle being registered to Lee. There can be no serious dispute that the purple Ford Flex that defendant was driving was highly similar to the one seen on the gas station's surveillance video as even defendant admitted that "[i]t could be the same car." The surveillance video also showed that the shooter was wearing a rather unique article of clothing—an orange hooded sweatshirt. When defendant was pulled over, he was wearing an orange hooded sweatshirt, and officers found a photo of defendant on his social media wearing a similar hooded sweatshirt. All of this pointed to defendant as the shooter, and this was confirmed by Bigbee. When officers interviewed Bigbee at the rehabilitation center in Ohio, they showed him a photo lineup, and he identified defendant as the individual who shot him. Considering the strength of this evidence, there is simply not a reasonable probability that the outcome of defendant's trial would have been different had defendant's trial counsel not elicited the prior-stabbing testimony from Bigbee. See *Jackson*, 292 Mich App at 600-601.

## III. STANDARD 4 BRIEF

In a Standard 4 brief, defendant raises a host of issues. Most of the issues in defendant's Standard 4 brief are not developed enough to merit addressing. See *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016); *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). To the extent possible, however, we will overlook this deficiency and do our best to substantively address each of defendant's issue.

### A. SENTENCING ISSUES

Defendant argues that he is entitled to resentencing as a result of several sentencing errors. First, he contends that the trial court erred by sentencing him as a fourth-offense habitual offender because three of the five qualifying prior felony convictions arose from the same transaction. We

review de novo whether a trial court properly sentenced a defendant as a fourth-offense habitual offender. *People v Anderson*, 331 Mich App 552, 556; 953 NW2d 451 (2020).

The statute governing habitual offenders, MCL 769.12, provides in relevant part:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

Defendant is correct that three of his prior felonies arose out of the same transaction on April 5, 2006, so the prosecution could only rely on one of those for a habitual enhancement. MCR 769.12(1)(a). But the prosecution listed *five* prior felonies in support of its notice for a habitual enhancement. Without two of the felonies from April 5, 2006, three qualifying felonies remained. At least one of those prior felonies, carrying a concealed weapon in violation of MCL 750.227, was a listed prior felony under MCL 769.12(6)(1)(*iii*). Therefore, defendant's prior record met the requirements of MCL 769.12(1)(a), and the trial court properly sentenced defendant as a fourth-offense habitual offender.

Defendant next argues that the trial court erred by departing from the guidelines when sentencing him for the AWIM conviction. Defendant was not given a departure sentence, however—the trial court sentenced defendant to the 25-year mandatory minimum for fourth-offense habitual offenders. Relatedly, defendant argues that the trial court erred by assessing 25 points for Offense Variable 3, but because defendant was not sentenced according to the guidelines, we need not address this issue.

Defendant also argues that the trial court erred by sentencing him to the mandatory minimum of 25 years. "Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021) (quotation marks and citations omitted). Defendant has not presented any circumstances that would render his sentence disproportionate. We therefore affirm defendant's 25-year minimum sentence.

## B. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed misconduct when she improperly vouched for Bigbee's credibility. Because defendant did not raise this issue in the lower court, it is

-7-

unpreserved. This Court reviews unpreserved claims for plain error affecting substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e. clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A prosecutor's misconduct only entitles a defendant to a new trial if the misconduct denied the defendant "a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Prosecutorial misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "A prosecutor may not vouch for the credibility of his witnesses," but arguing "from the facts that a witness should be believed" does not constitute vouching. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (quotation marks and citation omitted).

Defendant picks four statements from the prosecutor's rebuttal argument to support his contention that the prosecutor vouched for Bigbee. In response to defendant's argument that Bigbee fabricated his story because his testimony that defendant asked Bigbee "why did you do that" did not make sense, the prosecutor stated, "If Mr. Bigbee was coming here to lie, wouldn't he come here with a better story and say Mr. Giles said, oh, I'm going to get you, I'm going to kill you." Reviewing this statement in context of the entire rebuttal argument, it does not amount to improper vouching. The prosecutor merely highlighted the flaws in defendant's argument.

Defendant next objects to the prosecutor's statement, "Now this case comes down to credibility. Either you believe Mr. Bigbee about what happened or you don't." Defendant also objects to the prosecutor's statement, "Ask yourself, what does Mr. Bigbee have to gain by coming to court here and testifying? Nothing. That man has everything to lose." When read in context, the prosecutor in these statements was merely acknowledging that the jury's decision would involve a question of credibility. Such statements do not amount to improper vouching or an attempt to bolster Bigbee's testimony.

Defendant's final objection concerns the following statement by the prosecutor:

> If Mr. Bigbee was coming here to lie, wouldn't he come here with a better story and say Mr. Giles said, oh, I'm going to get you, I'm going to kill you. Instead, he said exactly what he heard Mr. Giles say, which is why you do that. He said I don't know what that means. That didn't mean anything to me. All I know next is that he pulled out a gun and started shooting me. Fired three times.
>
> He didn't say this man fired ten times, fifteen times, was shooting all over. He came and he testified consistent with what the evidence was in this case. *He didn't embellish his testimony, he didn't lie about his testimony. He was honest about what occurred.* That statement may not have made sense to Mr. Bigbee or anybody else for that matter, but that's what he came here and told you the Defendant said to him. [Emphasis added.]

Defendant argued that Bigbee's testimony of what defendant said to Bigbee before he shot him did not make sense, which rendered Bigbee's testimony unbelievable. The prosecutor's contested statement was a response to that argument—the prosecutor did not indicate that she had knowledge that Bigbee was truthful but argued that Bigbee reported what he heard, and she urged the jury to believe Bigbee because his testimony aligned with the other evidence presented at trial.

Even if the prosecutor went too far by affirmatively stating that Bigbee did not lie and that he was honest, defendant has not established that a new trial is warranted. The trial court instructed the jury that counsels' statements were not evidence and were only meant to help the jury understand their theories. Additionally, there was plenty of evidence that defendant was the shooter, as explained earlier. This Court will not "reverse a conviction where isolated, improper remarks did not cause a miscarriage of justice." *Id*. at 25.

## C.  EXTORTION AND INNOCENCE

Defendant argues that Bigbee was guilty of extortion and that the prosecution knowingly allowed false testimony although defendant was innocent. While defendant cites the elements of extortion, he failed to provide any argument or cite any legal authority as to how Bigbee's alleged extortion affected defendant's convictions or sentence. With regard to his claim of innocence, defendant asserts that Bigbee made false statements during his testimony and that the prosecution was aware of the statements' falsity, but this claim is impossible to address because defendant does not identify which of Bigbee's statements were purportedly false, nor does he explain how we can infer that the prosecution had knowledge of those statements' alleged falsity.

## D.  EFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel during the plea-bargaining process, and by his trial counsel's withholding of evidence and failure to present exculpatory witnesses.

At a pretrial on January 5, 2024, the prosecution reminded the trial court and defendant that it was the cutoff date for the plea offer. The prosecution reiterated its offer of defendant pleading guilty to the AWIM charge and the accompanying felony-firearm second offense charge in exchange for the prosecution agreeing to a sentence of 5 to 20 years' imprisonment for AWIM and 5 years for felony-firearm. The prosecution also reminded the trial court and defendant that defendant faced a mandatory minimum 25-year sentence if he was convicted at trial because of his fourth-offense habitual offender status. Defendant did not accept the offer.

Defendant has not articulated any factual basis for his argument regarding ineffective assistance of counsel during the plea-bargaining process, nor is any factual basis for this argument apparent from the record. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (quotation marks and citation omitted). Defendant has failed to meet this burden.

Additionally, defendant has failed to offer any factual basis for his claims of failure of preparation and withholding evidence. On appeal, defendant filed an audio recording of a conversation between two people speaking on the phone However, this Court's review of defendant's claim of ineffective assistance of counsel is limited to errors apparent on the record, given that no evidentiary hearing was sought or held on this claim. See *Abcumby-Blair*, 335 Mich App at 227. Because this recording was not part of the record and no motion to expand the record to include it has been filed, this Court will not review the recording.

Affirmed.


/s/ Philip P. Mariani
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace